Filed 5/22/24  In re E.R. CA4/2

*See dissenting opinion.*

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.R., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E082909 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ2000275) |
| v. | OPINION |
| R.W., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Susanne S. Cho and Natalie M. Lough, Judges; Elizabeth Tucker, Temporary Judge (pursuant to Cal. Const., art. VI, § 21).  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel for Plaintiff and Respondent.

Defendant and appellant R.W. (Mother) appeals after the termination of her parental rights to E.R. (a girl, born Sept. 2022; Minor) at a Welfare and Institutions Code section 366.26[1] hearing. On appeal, Mother contends the matter must be remanded to the juvenile court based on the lack of substantial evidence that the Indian Child Welfare Act of 1978[2] (ICWA) did not apply. She claims that plaintiff and respondent Riverside County Department of Public Social Services (the Department) did not adequately perform its duty of inquiry about Indian ancestry to determine whether Minor was an Indian child pursuant to California law (§ 224.2, subd. (b)). She additionally claims the juvenile court erred by failing in its duty of inquiry pursuant to section 224.2, subdivision (c).

## FACTUAL AND PROCEDURAL HISTORY

### A. DETENTION

Minor was born in September 2022. Minor's father, C.R. (Father[3]) was present at Minor's birth. The hospital reached out to the Department because it was concerned for

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[3] Father is not a party to the appeal.

Minor's safety should she be released from the hospital in the care of Mother and Father (collectively, Parents). At Minor's birth, Mother told the attending doctor that she believed she was pregnant with triplets but was advised she delivered only one baby. Father, who was present, became verbally aggressive with Mother because she had told him she was pregnant with triplets. Father expressed doubt that he was Minor's father.

Mother tested positive for amphetamines. Hospital staff also expressed concern that Mother would drop Minor because she held Minor "loosely." Parents had a brief, sexual relationship. Father wanted Mother to abort Minor because they had only just met when she got pregnant. He wanted a paternity test. Father was unemployed and lived with his mother and grandmother in Mecca. Father had used methamphetamine two days prior to Minor's birth. Father had an extensive criminal history.

A social worker spoke with Mother at the hospital. She had a "blunted affect," showing no emotion. She was a "poor historian." Mother stated that she had an ultrasound, which showed she was carrying triplets. She then stated she received no prenatal care. She claimed to have given birth in the hospital toilet. She planned to take Minor to Mecca as she had no home of her own. She admitted previously being diagnosed with bipolar disorder and schizophrenia. Drug tests on Minor were negative.

Mother had a previous case with the Department for Minor's half sibling. Mother had been granted family maintenance services for the half sibling. While Mother was receiving services, she failed to take her medication and was hospitalized on a psychiatric hold after making threats to herself and other persons. The dependency proceedings resulted in the half sibling being placed with the father and Mother losing custody.

3

The social worker prepared a probable cause statement to support the Department's application for a protective custody warrant for Minor. A protective custody warrant pursuant to section 340 was approved by the juvenile court on September 12, 2022. Minor was detained on September 12, 2022. Minor was placed in a foster family home on September 13, 2022.

On September 14, 2022, the Department filed a section 300 petition for Minor against Parents (petition). It was alleged pursuant to section 300, subdivision (b), failure to protect, that Mother abused controlled substances during pregnancy and tested positive for amphetamines at the time of Minor's birth; Mother had a history of untreated mental health issues including bipolar disorder and schizophrenia and had a history of psychiatric hospitalizations; Mother had an unresolved history of abusing controlled substances and alcohol; Mother had a transient lifestyle; Mother had a prior child welfare history; and Father had an extensive and unresolved history of abusing controlled substances.

The social worker represented that Parents were asked about Indian ancestry and the box was checked that an inquiry gave the social worker "no reason to believe the child is or may be an Indian child." No other information was provided. The Department also provided in the detention report that Parents had denied Indian ancestry.

The detention hearing was held on September 15, 2022. Parents were not present in court. No other relatives were present. The juvenile court found a prima facie showing had been made and Minor was ordered detained. The juvenile court adopted the Department's recommended findings and orders, which included that Parents were given

4

and were to complete an ICWA-020 form; that each participant was to be asked about Indian ancestry; and "there is no reason to believe or reason to know the child is an Indian child and ICWA does not apply."

B.   JURISDICTION/DISPOSITION REPORT AND HEARING

The jurisdiction/disposition report was filed on October 13, 2022.  The Department recommended that the juvenile court find the allegations in the petition true.  It also recommended psychological evaluations be conducted on Parents.  On September 27, 2022, Mother denied having any Indian ancestry.  On September 28, 2022, Father denied having any Indian ancestry.

Mother was interviewed regarding the allegations in the petition.  Mother admitted to having tested positive for amphetamines at the time of Minor's birth and that she suffered from untreated mental health problems, including bipolar disorder.  She was not receiving treatment.  She also admitted to being homeless and that she lost custody of Minor's half sibling.  She denied any substance abuse.  Father was also interviewed and admitted daily methamphetamine use.  He had spent five years in prison after being convicted of kidnapping.  He had immediately resumed using methamphetamine once he was released on parole.  He did not think he needed substance abuse treatment.

The Department also spoke with maternal grandmother, M.V. (MGM).  She had an estranged relationship with Mother.  M.V. stated that Mother suffered from mental health issues.  Her decision making was "not good" when she failed to take her medication.  M.V. would speak with family members to see if anyone could care for Minor.  A maternal aunt, R.M. (Aunt), contacted the Department.  She expressed concern

5

for Mother's mental health.  Parents gave the Department the names of their parents and stated that they had siblings.  However, they did not recommend any relatives for placement.  It was recommended that the juvenile court find that ICWA did not apply.  Mother filed an ICWA-020 form on October 18, 2022, and denied any Indian ancestry.

On October 18, 2022, the matter was called for the jurisdiction/disposition hearing.  Mother was present; Father was not present and had no contact with his counsel.  The Department requested that the juvenile court find the allegations in the petition true, and to continue the disposition hearing for 45 days for psychological evaluations of Mother, and paternity testing for Father.

The juvenile court found that ICWA did not apply.  The juvenile court noted Mother had previous dependencies and there was no new information of Indian ancestry.  The juvenile court admonished the Department to advise it immediately if any new information was obtained from any paternal or maternal relatives.  The juvenile court found the allegations in the petition true by a preponderance of the evidence.  The disposition hearing was set out 45 days to allow for the psychological evaluations of Mother and for paternity testing for Father.

The two psychiatric evaluations of Mother were submitted to the juvenile court.  It was recommended that she receive psychiatric treatment and take psychotropic medication.  It was also recommended that she engage in substance abuse treatment.  Mother had been diagnosed with delusional disorder, bipolar disorder, and narcissistic and dependent personality disorders.  One of the doctors recommended that Mother not be granted reunification services and that she should focus on her mental health.

6

An addendum report was filed by the Department on November 30, 2022, in which it recommended denying reunification services to Mother but granting Father reunification services. Minor had been placed with Aunt on November 29, 2022. The paternity test confirmed that Father was Minor's father. Mother had been inconsistent in her visitation with Minor. On December 6, 2022, Father filed an ICWA-020 form denying any Indian ancestry.

The disposition hearing was held on December 6, 2022. Father was present; Mother was not present. Paternal grandmother was present at the hearing. Paternal grandmother was seeking visitation. During the hearing, the juvenile court found that ICWA did not apply. The juvenile court then advised Father, "Sir, if you or your mom find out that there's anyone in your family's history with Native Indian Heritage, you have to let us know so we can follow up? Do you understand?" Father responded, "Okay." Mother was denied reunification services. Father was granted reunification services.

C.     SIX-MONTH REVIEW REPORT AND HEARING

The six-month status review report was filed on May 3, 2023. It was recommended that reunification services to Father be terminated and that the trial court set the section 366.26 hearing. Minor remained in the home of Aunt. The Department provided no new update on ICWA.

During the reporting period, Father had failed to enroll in any type of drug treatment program. He was transient and refused to go to a homeless shelter. He often stayed with paternal grandmother but had been asked to leave due to his continued

7

methamphetamine use. His last employment was in December 2021. Father had completed none of his services. Visits between Father and Minor had not gone well. Father acknowledged that he was not in a place to care for Minor and would not be opposed to Aunt providing permanency for Minor as long as he could periodically visit Minor. Minor was developing normally. Aunt and her husband were willing to adopt Minor.

At the six-month review hearing, Father, paternal grandmother, paternal aunt and paternal great-grandmother were present in court. No ICWA inquiry was made by the trial court of the paternal relatives who were present. Mother was not present and had not been in contact with her counsel. The trial court terminated Father's reunification services and set the matter for a section 366.26 hearing.

D.      SECTION 366.26 REPORTS AND HEARING

The Department filed a section 366.26 report on August 30, 2023. The Department sought a continuance of 120 days to complete an adoption assessment. No new ICWA information was provided. The Department recommended that Father's visits with Minor be terminated. He had engaged in a physical altercation with other paternal family members present at a visit while holding Minor. Law enforcement was contacted. The matter was heard on September 6, 2023. Parents were not present. Father's visits were terminated and the section 366.26 hearing was continued.

The Department provided an addendum report on December 7, 2023. The Department recommended termination of the parental rights of Parents and that Minor be

freed for adoption by Aunt and her husband. The adoption report was provided to the juvenile court.

An additional report was filed on December 20, 2023, again recommending termination of Parents' parental rights, and adoption as the permanent plan. The report reflected that Aunt had been asked on December 12, 2023, whether the family had any known Indian ancestry. She reported there was no known ancestry.

The section 366.26 hearing was held on January 3, 2024. Mother was present; Father was not present. The juvenile court terminated the parental rights of Parents and freed Minor for adoption.

## DISCUSSION

Mother contends the matter must be remanded based on the failure of the Department to adequately perform its initial duty of inquiry pursuant to the ICWA and pursuant to California law, specifically the requirement of section 224.2, subdivision (b), to inquire of Minor's extended family about Indian ancestry to determine whether Minor was an Indian child. The juvenile court also failed to made adequate inquiry of relatives who were present in court pursuant to section 224.2, subdivision (c). Mother argues that substantial evidence does not support the juvenile court's finding that ICWA did not apply.

### A.    ICWA AND STATE LAW REQUIREMENTS

" 'Notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.' " (*In re*

*S.R.* (2021) 64 Cal.App.5th 303, 313.) " 'ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child. [Citation.] Federal regulations implementing ICWA, however, require that state courts "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." ' [¶] . . . 'ICWA provides that states may provide "a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under" ICWA.' " (*In re J.S.* (2021) 62 Cal.App.5th 678, 685.)

Pursuant to California law, there is an initial inquiry requirement. Section 224.2, subdivision (a), provides, "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300, 601, or 602 may be or has been filed, is or may be an Indian child. The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." Subdivision (b) of section 224.2 provides, "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."

10

Subdivision (c) of section 224.2 provides, "At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."

### B. SECTION 224.2, SUBDIVISION (B) DOES NOT APPLY

Mother insists the juvenile court's finding that ICWA did not apply was not supported by substantial evidence as a result of the Department's failure to inquire of maternal and paternal relatives pursuant to section 224.2, subdivision (b). The Department has contended that the initial inquiry requirements of section 224.2, subdivision (b), were not applicable here as Minor was detained under a protective custody warrant pursuant to section 340, and based on the plain language of section 224.2, subdivision (b), it only applies to detentions pursuant to section 306. Mother encourages this court to reject the Department's argument and find that the application of section 224.2, subdivision (b), should not depend on how a child was initially removed.

"There is no federal duty to inquire of extended family members." (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) The duty of inquiry under state law comes from section 224.2, subdivision (b). There is a split between California appellate courts on whether section 224.2, subdivision (b), limits the duty of inquiry as to extended family members to cases where a minor is taken into temporary custody without a warrant, and the question is currently pending before the California Supreme Court.

11

Some appellate courts have found the statutory language means an agency has no initial duty to ask extended family members about possible Indian ancestry unless the child was taken into temporary custody under section 306. (See, e.g., *In re Andres R.* (2023) 94 Cal.App.5th 828, review granted Nov. 15, 2013, S282054; *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572 [lead case]; and *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743.) Other courts have found the duty of initial inquiry applies regardless of how the child is removed from the home. (See, e.g., *In re L.B.* (2023) 98 Cal.App.5th 512, 517; *In re C.L.* (2023) 96 Cal.App.5th 377, 386; *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted Sept. 27, 2023, S281447.)

We follow those cases that conclude the duty of inquiry in section 224.2, subdivision (b), only applies if a child is taken into temporary custody under section 306. We follow the reasoning in *In re Andres R.*, *supra*, 94 Cal.App.5th 828, and need not repeat the extensive examination of the issue provided in the case. We adopt its reasoning here. Based on the plain language in section 224.2, subdivision (b), it is applicable only to situations where "a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306." Here, Minor was placed into the Department's custody pursuant to a court order under section 340, subdivision (a), not through the warrantless removal procedure provided by section 306. Accordingly, the Department was not required to conduct inquiries with "extended family members" at this initial inquiry stage pursuant to section 224.2, subdivision (b).

12

C.     DUTY OF INQUIRY UNDER SECTION 224.2, SUBDIVISION (C)

Mother also contends that the juvenile court erred by failing to fulfill its statutory duty of inquiry pursuant to section 224.2, subdivision (c).  Mother contends the juvenile court failed to inquire of her directly regarding Indian ancestry when she was present in court.  Further, despite paternal grandmother, paternal aunt and paternal great grandmother being present in court on May 10, 2023, the juvenile court failed to make any ICWA inquiry of these paternal relati.ves as required by subdivision (c) of section 224.2.

Here, Father and paternal grandmother first appeared together in court at the disposition hearing and the juvenile court advised them that they were to provide any information regarding Indian ancestry.  The juvenile court did not directly inquire of paternal grandmother as to Indian ancestry.[4]   Further, Mother was never directly asked about Indian ancestry when she was in court.  This constituted state law error.  Mother also refers to section 224.2, subdivision (a), but provides no further argument as to how the juvenile court erred by failing to inquire under subdivision (a).  Even if we were to consider the argument, as set forth *post*, any failure to inquire of relatives who appeared in court was harmless.

Reversal in this case is warranted only if we find that failure of its duty of inquiry by the juvenile court was prejudicial.  (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

---

[4] Paternal aunt and paternal great-grandmother appeared in court with Father on May 10, 2023, which was not the first appearance by Father.  As such, section 224.2, subdivision (c), was not applicable to paternal aunt and paternal great-grandmother.

13

We note that the appellate courts have adopted several competing standards of prejudicial error in assessing the prejudicial effect of ICWA-related inquiry errors, and the California Supreme Court is currently reviewing the issue. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 776-786, review granted Sept. 21, 2022, S275578.) The California Supreme Court will ultimately decide the issue.

In the meantime, we follow the standard set forth in *Benjamin M.* In that case, the court found that "[I]n ICWA cases, a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child. This approach is consistent with the caselaw. In such cases, courts have generally avoided applying broad, rigid reversal rules and instead focused on whether the missing information was readily obtainable and whether such information would have shed meaningful light on the inquiry that the agency had the duty to make." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744; see also *In re Y.M.* (2022) 82 Cal.App.5th 901, 916 [finding the standard in *Benjamin M.* achieved "a proper balance of our state constitutional requirement of a miscarriage of justice for reversal and the imposition of appropriate consequences on appeal, in consideration of the rights of parents and Indian tribes, when an agency fails to comply with its . . . duty of initial inquiry regarding a child's possible Indian ancestry"].)

Parents advised the Department they had no Indian ancestry, and they had each signed the ICWA-020 form denying Indian ancestry. Further, Aunt advised the Department the

14

family had no Indian ancestry. As such, any conceivable error in the juvenile court failing to inquire in court of Mother, Father and Aunt is harmless.

Moreover, Father and paternal grandmother were present in court at the disposition hearing. At that time, the juvenile court advised both of them if they had any information regarding Indian ancestry, they must notify the court. Certainly, the better practice would have been to inquire directly of paternal grandmother, but she was present in court and had an obligation to provide any information she had regarding Indian ancestry once admonished by the juvenile court. After Father denied ancestry, and paternal grandmother volunteered no further information, any error here in not additionally asking other relatives who appeared in court about potential Indian heritage was harmless. Such inquiry would not have provided any additional meaningful information on Indian ancestry. Any conceivable error was harmless.

## DISPOSITION

The order terminating the parental rights to Minor is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.


I concur:


MENETREZ _____
J.


15

[*In re E.R.; DPSS v. R.W.*, E082909]

RAMIREZ, P. J., Dissenting.

I respectfully dissent. I do not agree with the majority's interpretation of the duty of initial inquiry imposed on Riverside County's Department of Public Social Services (the Department) by Welfare and Institutions Code section 224.2, subdivision (b) (section 224.2(b)),[1] or with its conclusion that the juvenile court's failure to comply with its duty of inquiry set forth in subdivision (c) of section 224.2 (section 224.2(c)) was harmless error.

1. *The Department's Duty of Inquiry Under Section 224.2(b)*

This court is divided on the issue whether the manner of removal determines the obligation of a child services agency such as the Department to comply with section 224.2(b).

On one hand, in the cases cited in the majority's opinion, led by *In re Robert F.*, some members of this court find the extended inquiry requirement set forth in section 224.2(b) does not apply if a child is removed pursuant to a section 340 protective custody warrant. (*In re Robert F.* (2023) 90 Cal.App.5th 492, 500 (*Robert F.*), review granted July 26, 2023, S279743; in accord, *In re Andres R.* (2023) 94 Cal.App.5th 828, 849, but see *id.* at pp. 860-865 (conc. opn. of Slough, J.), review granted Nov. 15, 2023, S282054; *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572.)

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise noted. References to "ICWA" are to the Indian Child Welfare Act of 1978 (25 U.S.C. §§ 1901, et seq.). All references to rules are to the California Rules of Court.

1

On the other hand, the panel in *In re Delila D.* held the manner of removal has no bearing on the question whether a child may be an Indian child. (*In re Delila D.* (2023) 93 Cal.App.5th 953, 962, 965-976 (*Delila D.*), but see *id.* at pp. 977-981 (dis. opn. of Miller, J.), review granted Sept. 27, 2023, S281447.) *Delila D.* emphasized the goal of the initial inquiry requirement, including the expanded duty of inquiry of extended family members, is to determine whether state and federal ICWA protections may apply to the proceedings. (*Id.* at pp. 962, 965-976.) It concluded that *Robert F.* is based on a plain err of statutory construction which, if followed, undermines that goal. (*Id.* at p. 975.)

In my view, the analysis set forth in *Delila D.* and its progeny are persuasive and should be embraced unless and until our Supreme Court reaches a different conclusion. (*Delila D.*, *supra*, 93 Cal.App.5th at pp. 965-976, review granted; accord, *In re Samantha F.* (2024) 99 Cal.App.5th 1062, 1068-1069, but see *id.* at pp. 1086-1092 (con. & dis. opn. of Fields, J.) (Fourth Dist., Div. Two); *In re L.B.* (2023) 98 Cal.App.5th 512, 516-518 (First Dist., Div. Four); *In re C.L.* (2023) 96 Cal.App.5th 377, 385-391 (Third Dist.); *In re V.C.* (2023) 95 Cal.App.5th 251, 256-260 (First Dist., Div. Two); *In re Jerry R.* (2023) 95 Cal.App.5th 388, 411-426 (Fifth Dist.).)

Here, the availability of paternal relatives establishes the existence of readily obtainable information likely to bear meaningfully upon whether the child is or might be an Indian child. Accordingly, I would conditionally reverse the judgment for compliance with section 224.2(b). (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*).)

2. *The Juvenile Court's Duty of Inquiry Under Section 224.2(c)*

Here, as the majority acknowledges, the juvenile court failed to comply with the requirement set forth in section 224.2(c) because it did not ask either parent at their first appearance whether they had Native American heritage, or question the paternal grandmother (who was present with the father when he first appeared) about the family's ancestry. In addition, the court did not comply with the affirmative and continuing duty to ask the parties and interested persons present at the hearings (including several paternal relatives attending the six-month review hearing) whether the child is or may be an Indian child. (§ 224.2, subd. (a); rule 5.481(a).)

The majority finds the juvenile court's failure to comply with its duties of inquiry is harmless. That holding is based upon (i) the Department's report of the parents' denial of Indian ancestry and their checking of the box on their respective Judicial Council ICWA-020 forms stating that none of the Indian Status statements applied; (ii) the report of no known Native American ancestry made by the maternal aunt (the child's caretaker and prospective adoptive parent) to the Department just a few weeks before the permanent plan selection hearing; and (iii) the paternal grandmother's failure to volunteer information bearing on the subject at the December 2022 hearing on disposition when, after the court made a no-ICWA finding, it told the father "to let us know" if he or paternal grandmother found anyone in their family's history with Native Indian heritage.

I disagree with the conclusion that the court's failure to comply with its duties is harmless. The juvenile court's ongoing and affirmative duties of inquiry set forth in subdivisions (a) and (c) of section 224.2 are in addition to, not in lieu of, the

3

Department's duties of inquiry. There would be no reason for the Legislature to impose distinct duties of inquiry on the juvenile court if it had concluded that the filing of ICWA-020 forms and the information provided in the Department's reports were adequate to protect Indian children and promote the stability and security of Indian tribes and families. (See 25 U.S.C. §1902.)

Nor do I agree with the conclusion that the paternal grandmother's silence at the dispositional hearing rendered harmless the court's failure to make direct inquiry of paternal grandmother at that time or its subsequent failure to ask her, the paternal aunt, and the paternal great-grandmother about the child's ancestry when they all appeared at the May 2023 review hearing.

First of all, there is no evidence the court admonished the paternal grandmother to provide any information she had regarding Indian ancestry. Second, even if the majority was correct that the paternal grandmother had been admonished and did have an obligation to interrupt the proceedings to volunteer any ICWA-related information she possessed, that would not excuse the court from failing to fulfill its continuing and affirmative duty to make inquiries when the paternal relatives appeared at the review hearing. (§ 224.2, subds. (a) & (c); rule 5.481(a).)

I recognize there may be circumstances in which information provided in a parent's ICWA-020 form and in reports by a child services agency like the Department might render a juvenile court's lack of compliance harmless. But, in cases like the present one in which the Department did not expand its ICWA inquires to include readily available extended family members and others having an interest in the child, there is

4

insufficient information to support the conclusion that the that juvenile court's errors were not prejudicial.  (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

RAMIREZ
P. J.